Dennis L. Wilson (Bar No. 155407)
dwilson@kmwlaw.com
David K. Caplan (Bar No. 181174)
dcaplan@kmwlaw.com
Caroline Y. Bussin (Bar No. 239343)
cbussin@kmwlaw.com
KEATS McFARLAND & WILSON LLP
9720 Wilshire Boulevard
Penthouse Suite
Beverly Hills, California 90212
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Attorneys for Plaintiff
Summit Entertainment, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

SUMMIT ENTERTAINMENT, LLC, a Delaware limited liability company,

Plaintiff,

v.

DAIANA SANTIA, an individual; HECTOR SANTIA, an individual; and JOHN DOES 1-10,

Defendants.

Case No.: CV11-06310 ODW (SSx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF SUMMIT ENTERTAINMENT, LLC'S MOTION FOR DEFAULT JUDGMENT**

Date: July 29, 2013
Time: 1:30 p.m.
Place: Hon. Otis D. Wright II
Courtroom 11
Spring Street Courthouse
312 N. Spring Street
Los Angeles, California 90012

Plaintiff SUMMIT ENTERTAINMENT, LLC ("Summit") hereby submits this Memorandum of Points and Authorities in support of its Motion for Default Judgment ("Motion") against Defendants DAIANA SANTIA and HECTOR SANTIA (collectively "Defendants").

# TABLE OF CONTENTS


I. INTRODUCTION ..... 1

II. STATEMENT OF FACTS ..... 1

- A. Procedural Background ..... 1
- B. Summit's World Famous Twilight Franchise ..... 1
- C. Defendants' Unauthorized and Unlawful Conduct ..... 2

III. LEGAL ARGUMENT ..... 3

- A. Jurisdiction ..... 3
  - 1. The Court Has Subject Matter Jurisdiction ..... 3
  - 2. Defendants are Subject to Personal Jurisdiction ..... 4
- B. Standard for Default Judgments ..... 5
  - 1. Summit Will Be Prejudiced if Default Judgment Is Not Entered ..... 7
  - 2. Summit's Claims Are Meritorious and Its Complaint Is Sufficient ..... 7
  - 3. The Sum of Money at Stake is Consistent with the Allegations of Harm in Summit's Complaint ..... 10
  - 4. There Is No Possibility of a Genuine Issue of Material Fact ..... 11
  - 5. The Default Entered Against Defendants did Not Result from Excusable Neglect ..... 11
  - 6. The Policy Favoring Adjudication of Disputes on the Merits does Not Weigh Against Default Judgment ..... 11
- C. Summit is Entitled to Its Requested Relief ..... 12
  - 1. Summit is Entitled to Injunctive Relief ..... 12
  - 2. Summit is Entitled to Statutory Damages ..... 13
  - 3. Summit is Entitled to Attorneys' Fees ..... 14
  - 4. Summit is Entitled to Post Judgment Interest ..... 15

IV. CONCLUSION .......... 15

**Cases**

*A&M Records, Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001).......... 7

*Aldabe v. Aldabe*,
616 F.2d 1089 (9th Cir. 1980).......... 6

*Amini Innovation Corp. v. KTY Intern. Marketing*,
768 F.Supp.3d 1049 (C.D. Cal. 2011) .......... 6, 7

*Autodesk, Inc. v. Flores*,
CV:10-11687, 2011 U.S. Dist. LEXIS 11687 (N.D. Cal. January 31, 2011).......... 13

*Burger King Corp. v. Rudzewicz*,
471 U.S. 462 (1985) .......... 5

*Craigslist, Inc. v. Naturemarket, Inc.*,
694 F.Supp.2d 1039 (N.D. Cal. 2010) .......... passim

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .......... 12, 13

*eBay, Inc. v. Bidder's Edge, Inc.*,
100 F.Supp.2d 1058 (N.D. Cal. 2000) .......... 10

*Eitel v. McCool*,
782 F.2d 1470 (9th Cir. 1986).......... 6, 11, 12

*Fogerty v. Fantasy, Inc.*,
510 U.S. 517, 114 S. Ct. 1023, 127 L. Ed. 2d. 455 (1994).......... 14

*Herman Miller, Inc. v. Alphaville Design, Inc.*,
CV:08-3437, 2009 U.S. Dist. LEXIS 103384 (N.D. Cal. October 22, 2009) .......... 13

*Historical Research v. Cabral*,
80 F.3d 377 (9th Cir. 1996).......... 14

*Int'l Shoe Co. v. Washington*,
326 U.S. 310 (1945) .......... 4

*Landstar Ranger, Inc. v. Parth Enterprises, Inc.*,
725 F.Supp.2d 916 (C.D. Cal. 2010)........................................................ 10, 11

*Panavision Int'l, L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998)............................................................................ 5

*PepsiCo v. Tiunfo-Mex, Inc.*,
189 F.R.D. 431 (C.D. Ca. 1999) .................................................................. 6, 12

*Philip Morris U.S.A. Inc. v. Castworld Prods.*,
219 F.R.D. 494 (C.D. Cal. 2003) ...................................................................... 11

*Schwarzenegger v. Fred Martin Motor Co.*,
374 F.3d 797 (9th Cir. 2004)................................................................................ 4

*Warner Bros. Entm't. Inc. v. Paul Duhy*,
CV:09-5798, 2009 U.S. Dist. LEXIS 123332 (C.D. Cal. Nov. 30, 2009).............. 13

**Statutes**

17 U.S.C. § 504(c)............................................................................................ 14

17 U.S.C. § 504(c)(1) ........................................................................................ 13

17 U.S.C. §§ 501 ............................................................................................. 3, 7

17 U.S.C. Section 106 ........................................................................................ 7

18 U.S.C. § 1030 ................................................................................................ 3

18 U.S.C. § 30(g) .............................................................................................. 12

28 U.S.C. Section 1331 ....................................................................................... 3

28 U.S.C. Section 1367(a).................................................................................... 3

28 U.S.C. Section 1961(a)................................................................................... 15

California Penal Code § 502 ........................................................................... 3, 12

California Penal Code Section 502(c)................................................................... 9

**Rules**

Federal Rule of Civil Procedure 55(b)(2) ......................................................... 5, 6

Local Rule 55-1 .................................................................................................. 6

Local Rule 55-3 ................................................................................................. 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 17, 2013, upon the request of Summit, the Clerk of Court entered defaults against Defendants in this copyright infringement and computer fraud action. Plaintiff now moves for entry of a default judgment against the Defendants seeking a permanent injunction, statutory damages and attorneys' fees and costs.

Summit filed its Complaint after discovering that Defendants had egregiously accessed, viewed and downloaded from Summit's secure computer servers and accounts Summit's film footage, audio and photographs from the feature films "The Twilight Saga: Breaking Dawn – Part 1" and "The Twilight Saga: Breaking Dawn – Part 2." After Defendants failed to respond to the Complaint, Summit sought and obtained a Clerk's default. Accordingly, under Federal Rule of Civil Procedure 55, the allegations of the Complaint are deemed true for purposes of this request for a default judgment, and Summit is entitled to the relief it seeks.

## II. STATEMENT OF FACTS

### A. Procedural Background

Summit filed its Complaint in this matter on August 1, 2011. (Declaration of David K. Caplan ("Caplan Decl.") ¶ 2) (Dkt. No. 1 ("Complaint").) Summit served Defendants with process on June 25, 2012, pursuant to the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Convention"). (Caplan Decl. ¶ 3 Exs. A-B.) The Clerk entered Defendants' default on June 17, 2013. (Caplan Decl. ¶ 4, Ex. C.) To date, Defendants have not responded to Summit's Complaint or otherwise participated in this litigation. (Caplan Decl. ¶ 5.)

### B. Summit's World Famous Twilight Franchise

Summit, a limited liability company with its principal place of business in Santa Monica, California, owns rights in and to the feature films "The Twilight Saga: Breaking Dawn – Part 1" and "The Twilight Saga: Breaking Dawn – Part 2"

including all images and elements contained therein (collectively, the "Twilight Films"). The Twilight Films, including without limitation the images and audio contained therein, are entitled to protection under federal copyright law. (Compl. ¶¶ 3-4.) The Twilight Films are the final films in the "The Twilight Saga" series. The first three films in this series were "Twilight," "The Twilight Saga: New Moon," and "The Twilight Saga: Eclipse." These three films have generated worldwide theatrical box office receipts in excess of $1.8 billion dollars ($1,800,000,000). (Compl. ¶ 9.)

During the course of production of the Twilight Films, Summit created and stored elements of the Twilight Films, including but not limited to film footage, audio and photographs (the "Content") on secure computer servers and accounts (the "Servers"). (Compl. ¶ 10.) Summit owns all rights in the Content, including without limitation, all relevant copyrights, and strictly limited access to the Content. Among other things, Summit utilized various technological security measures to ensure that only authorized individuals may access the Servers to view or download the Content. During the production of the Twilight Films, Summit took steps to ensure that the Content was kept strictly confidential and only released select images and video content prior to the Twilight Films' release as part of its detailed marketing and promotion plans. (Compl. ¶ 11.)

C. **Defendants' Unauthorized and Unlawful Conduct**

In or about October of 2010, Defendants began attempting to access the Servers surreptitiously and without authorization, and succeeded in gaining unauthorized access to the Servers on multiple occasions in 2010 and 2011. (Compl. ¶ 12.) Defendants accessed, viewed and downloaded Summit's Content from the Servers without authorization, and subsequently reproduced, altered, and distributed copies of the Content (collectively the "Infringing Material") through various means, including without limitation by email, through social networking services such as Twitter and Tumblr, and by posting the Infringing Material on various Internet websites. (Compl. ¶ 13.)

Defendants' creation, reproduction and distribution of the Infringing Material has been without authorization and is without Summit's consent. Defendants have acted with willful and intentional disregard of Summit's rights, and Summit has sustained substantial and irreparable damage as a result thereof. In light of the fact that the Defendants have copied and stolen the Content prior to the release of the Films, their conduct has been particularly damaging to Summit. (Compl. ¶ 14.) Accordingly, Summit filed its Complaint against Defendants on August 1, 2011, asserting claims for: (1) Violation of the Computer Fraud and Abuse Act ( "CFAA") (18 U.S.C. § 1030); (2) Violation of California Penal Code § 502; (3) Trespass to Chattels; and (4) Federal Copyright Infringement (17 U.S.C. §§ 501 *et seq*.).

## III. **LEGAL ARGUMENT**

### A. **Jurisdiction**

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has the affirmative duty to look into its jurisdiction over the subject matter and the parties." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F.Supp.2d 1039, 1051 (N.D. Cal. 2010).

#### 1. The Court Has Subject Matter Jurisdiction

The Court has subject matter jurisdiction over this action. Under 28 U.S.C. Section 1331, district courts have original jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. As indicated above, Summit has asserted two claims arising under federal laws, including claims for copyright infringement and violation of the CFAA. Accordingly, the Court may properly exercise jurisdiction over this matter pursuant to Section 1331. Furthermore, because Summit's state law claims "are so related to [the] claims" within the Court's original jurisdiction, the Court may also properly exercise supplemental jurisdiction over Summit's state law claims pursuant to 28 U.S.C. Section 1367(a).

///

///

2. Defendants are Subject to Personal Jurisdiction

Defendants are subject to personal jurisdiction in this Court. "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Craigslist, supra*, 694 F.Supp.2d at 1053. "Because California's long arm statute is co-extensive with federal due process requirements, the jurisdictional analyses under California law and federal due process are the same." *Ibid.* Accordingly, absent traditional bases for personal jurisdiction such as physical presence, domicile or consent, due process requires that nonresident defendants have certain "minimum contacts" with the forum state "such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

The Ninth Circuit has established a three-prong test for analyzing whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction: "(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004).

Here, all three prongs are satisfied. First, Defendants knowingly accessed, viewed and downloaded Summit's Content from the Servers without authorization, and subsequently reproduced, altered, and distributed copies of the Content (collectively the "Infringing Material") through various means, including without limitation by email, through social networking services such as Twitter and Tumblr, and by posting the Infringing Material on various Internet websites. (Compl. ¶ 13.)

The various Servers accessed by the Defendants were located in California. (Caplan Decl., ¶ 8). Furthermore, in addition to the location of the Servers, Summit is headquartered in California, Defendants' actions were directly targeted at California, and Defendants knew that Summit would suffer the brunt of its harm in California. (See Compl. ¶ 3.)

With respect to the second prong of the minimum contacts test, a plaintiff's claims must arise "out of the defendant's forum-related activities." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998). "In order to satisfy this requirement, the plaintiff must show that 'but for' the defendant's forum-related conduct, the injury would not have occurred." *Craigslist, supra*, 694 F.Supp.2d at 1053. Here, Defendants' willful copyright infringement and unlawful access to Summit's Servers, located in California, were intentionally directed at Summit, a company headquartered in California, and the harm caused by Defendants was felt in California. Accordingly, Summit's claims arise out of the Defendants' forum-related contacts because the harm to Summit would not have occurred but-for the Defendants' actions.

"The third and final prong assesses the reasonableness of exercising jurisdiction over the defendant." *Id.* at 1054. "For jurisdiction to be reasonable, it must comport with 'fair play and substantial justice.'" *Ibid.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Here, there is nothing in the record to suggest that it would be inconvenient or otherwise unfair to require Defendants to defend this action in this District. Thus, this factor supports the exercise of personal jurisdiction over Defendants. Because all factors under the minimum contacts test favor the exercise of personal jurisdiction, this Court may properly exercise personal jurisdiction over Defendants.

B. **Standard for Default Judgments**

Under Federal Rule of Civil Procedure 55(b)(2), a party may apply to the court for entry of a default judgment. "The district court's decision whether to enter a

default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Ninth Circuit has enumerated the following factors to consider in determining whether a default judgment is appropriate: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the policy favoring adjudication on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

"In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Tiunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Ca. 1999). "When reviewing a motion for default judgment, the Court must accept the well-pleaded allegations of the complaint relating to liability as true." *Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.3d 1049, 1053 (C.D. Cal. 2011).

Further, under Local Rule 55-1, a motion for default judgment must be accompanied by a declaration: (1) identifying when and against what party default was entered; (2) identifying the pleading to which default was entered; (3) stating whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator or other representative; (4) stating that the Servicemembers Civil Relief Act does not apply; and (5) stating that notice has been served on the defaulting party, if required by Federal Rule of Civil Procedure 55(b)(2). Here, Summit was not required to serve Defendants with notice of this instant Motion because Defendants have not appeared in this action either personally or by a representative. Summit has complied with the remainder of the requirements under Local Rule 55-1. (Caplan Decl. ¶¶ 4 - 6.) Further, as set forth in detail below, the *Eitel* factors all favor granting default judgment in favor of Summit.

/ / /

1. Summit Will Be Prejudiced if Default Judgment Is Not Entered

Summit will be prejudiced if default judgment is not entered against Defendants. As Defendants have not appeared in this action, a default judgment is the only means available for compensating Summit for Defendants' unlawful conduct. *See Amini Innovation Corp. v. KTY Intern. Marketing*, 768 F.Supp.2d 1049, 1054 (C.D. Cal. 2011). If the Court does not enter a default judgment in favor of Summit, Defendants will be allowed to avoid liability by not responding to Summit's claims.

2. Summit's Claims Are Meritorious and Its Complaint Is Sufficient

Under the second and third *Eitel* factors, the Court must examine whether Summit has pled facts sufficient to establish and succeed on its claims. As set forth below, Summit has sufficiently alleged each of the claims in its Complaint, each of which is meritorious.

*a. Copyright Infringement*

The Copyright Act grants the copyright owner the exclusive right to reproduce a copyrighted work, to distribute copies of the work, and to authorize reproduction or distribution. *See* 17 U.S.C. § 501. To establish copyright infringement, a plaintiff must prove: (1) ownership of a valid copyright, and (2) that the defendant violated at least one exclusive right granted to the plaintiff under 17 U.S.C. Section 106. *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001). Summit has met this standard. As to the first element, the Complaint alleges that Summit owns Federal Copyright Registration Nos. PAu3-521-211 and Pau3-521-218 for the screenplays to the Twilight Films, and owns all the copyrights in all derivative works based thereon, including without limitation the Content. (Compl. ¶ 39.) The Complaint further alleges that Summit has registered numerous images and clips related to the films, identified in Exhibit 1 to the Complaint. (Compl. ¶ 40, Ex. 1.) As to the second element, Summit alleges that Defendants have created, reproduced and distributed copies of elements of the Twilight Films through various means, including email, through social networking services such as Twitter and Tumblr, and by posting

the Infringing Material on various Internet websites, without Summit's consent. (Compl. ¶¶ 14, 41.) These allegations are sufficient to establish a claim for copyright infringement under 17 U.S.C. Section 501.

*b. Violation of the CFAA*

To state a claim under the CFAA, Summit must show that Defendants "intentionally accessed a protected computer without, authorization and as a result of such conduct, caused damage or recklessly caused damage or loss." *Craigslist, supra,* 694 F.Supp.2d at 1057. Summit has adequately pled a claim for violation of the CFAA. First, Summit has established that its Servers were involved in interstate and foreign commerce and communication, and are therefore protected under the CFAA. (Compl. ¶ 16). Second, Summit alleged that Defendants intentionally accessed the Servers without authorization and have, through interstate or foreign communication, obtained information from the Servers in violation of the CFAA. (Compl. ¶ 17). Summit further alleged that Defendants have, knowingly and with the intent to defraud, accessed the Servers without authorization, furthered the intended fraud, and obtained the valuable Content in violation of the CFAA. (Compl. ¶ 18). Finally, Summit alleged that Defendants' actions have caused loss to one or more persons, including without limitation Summit, in a one year period aggregating at least $5,000 in value. (Compl. ¶ 19). Accordingly, Summit has established its claim under the CFAA.

*c. Violation of California Penal Code § 502*

In its second cause of action, Summit alleges that Defendants violated California Penal Code Sections 502(c)(1), (2), (3), (6) and (7), which provide:

> (c) Except as provided in subdivision (h), any person who commits any of the following acts is guilty of a public offense:
>
> (1) Knowingly accesses and without permission alters, damages, deletes, destroys, or otherwise uses any data, computer, computer system, or computer network in order to either (A) devise or execute any scheme or

> artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data.
>
> (2) Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network.
>
> (3) Knowingly and without permission uses or causes to be used computer services.
>
> […]
>
> (6) Knowingly and without permission provides or assists in providing a means of accessing a computer, computer system, or computer network in violation of this section.
>
> (7) Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network.

Summit has sufficiently stated a claim under Section 502(c). With respect to subsection (c)1, Summit alleged that Defendants knowingly accessed and without permission made use of data from the Servers in order to wrongfully control or obtain money, property, or data. (Compl. ¶ 23). Under subsection (c)(2), Summit alleged that Defendants knowingly accessed and without permission took, copied or made use of data from the Servers. (Compl. ¶ 24). With respect to subsection (c)(3), Summit alleged that Defendants knowingly and without permission used Summit's computer services. (Compl. ¶ 25). Under subsection (c)(6), Summit alleged that Defendants knowingly and without permission provided or assisted in providing a means of accessing the Servers. (Compl. ¶ 26). Finally, with respect to subsection (c)(7), Summit alleged that Defendants knowingly and without permission accessed, or caused to be accessed, the Servers. (Compl. ¶ 27). Taking all of the allegations in Summit's Complaint as true, Summit has stated a claim for violation of Penal Code Section 502(c).

*d. Trespass to Chattels*

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage to plaintiff." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F.Supp.2d 1058, 1069-1070 (N.D. Cal. 2000). Here, Summit alleged that it has a possessory interest in the servers and Defendants intentionally and without authorization interfered with Summit's possessory interest in the Servers by accessing the Servers and viewing and downloading Content from the Servers without authorization. (Compl. ¶ 33). Summit further alleged that Defendants' conduct has and will continue to cause Summit irreparable harm for which there is no adequate remedy at law, and is also causing damage to Summit. (Compl. ¶ 34). Summit has therefore adequately alleged a claim for trespass to chattels based on Defendants' conduct.

3. The Sum of Money at Stake is Consistent with the Allegations of Harm in Summit's Complaint

"The fourth *Eitel* factor examines the amount of money at stake in relation to the seriousness of a defendant's conduct." *Craigslist, supra,* 694 F.Supp.2d at 1060. "This requires that the court assess whether the recovery sought is proportional to the harm caused by the defendant's conduct." *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F.Supp.2d 916, 921 (C.D. Cal. 2010). Summit seeks injunctive relief against further infringement and wrongful conduct by Defendants and statutory damages of $2,100,000 ($150,000 for infringement of each of the 14 copyrights) pursuant to 17 U.S.C. Section 504(c)(2). The amount of money sought by Summit is consistent with the allegations of knowing and willful conduct by Defendants and the claims asserted. *See Craigslist, supra,* 694 F.Supp.2d at 1060 (holding that this factor weighed in favor of default judgment where plaintiff asserted copyright, trademark breach of contract,

and fraud claims and sought damages in the range of $1,177,827.07 to $4,900,327.07). Accordingly this favor weighs in favor of granting default judgment.

4. There Is No Possibility of a Genuine Issue of Material Fact

"The fifth *Eitel* factor examines the likelihood of dispute between the parties regarding the material facts surrounding the case." *Craigslist, supra,* 694 F.Supp.2d at 1060. As set forth above, Summit has established that no possibility of a genuine issue of material fact exists in this matter because Defendants' default has established the allegations of material fact in Summit's Complaint as true. "Thus, no dispute has been raised regarding the material averments of the complaint, and the likelihood that any genuine issue may exist is, at best, remote. This factor therefore favors the entry of default." *Philip Morris U.S.A. Inc. v. Castworld Prods.*, 219 F.R.D. 494, 500 (C.D. Cal. 2003).

5. The Default Entered Against Defendants did Not Result from Excusable Neglect

"The sixth *Eitel* factor considers whether defendant's default may have been the product of excusable neglect." *Landstar, supra,* 725 F.Supp.2d at 922. That is not the case here. In the time since they were served with the summons and Complaint, Defendants have chosen not to participate in this litigation in any capacity. Under these circumstances, courts have rightfully concluded that "the possibility of excusable neglect is remote." *Philip Morris*, *supra*, 219 F.R.D. at 501.

6. The Policy Favoring Adjudication of Disputes on the Merits does Not Weigh Against Default Judgment

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court form entering default judgment." *Craigslist, supra,* 694 F.Supp.2d at 1061. Although "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel, supra,* 782 F.2d at 1472, "Rule 55(a) allows a court to decide a case before the merits are heard if defendant fails to appear and defend." *Landstar, supra,* 725 F.Supp.2d at 922. Where a defendant's failure to

appear "makes a decision on the merits impracticable if not impossible," entry of default judgment is warranted. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). As Defendants have failed to appear or respond in this matter, a decision on the merits is impossible. Accordingly this factor weighs in favor of a default judgment.

In sum, accepting all of the allegations in Summit's Complaint as true, the factors articulated in *Eitel* militate in favor of granting a default judgment against Defendants and Summit's instant Motion should be granted in its entirety.

### C. Summit is Entitled to Its Requested Relief

#### 1. Summit is Entitled to Injunctive Relief

Summit seeks injunctive relief to permanently enjoin Defendants from accessing Summit's Servers without authorization and from using reproducing, distributing, selling or offering for sale, Summit's Content, the Infringing Material, or any other Summit images or films. The injunction Summit requested in its Complaint, which is also included in the proposed Default Judgment submitted herewith, is both authorized by the relevant statutes and warranted under the facts of this case. As set forth in detail above, Summit has shown that it is entitled to judgment on each of its claims, including its claims for federal copyright infringement and violation of the CFAA. Both of these statutes authorize a Court to grant injunctive relief. *See* 17 U.S.C. § 502 (authorizing a court to grant injunctions "as it may deem reasonable to prevent or restrain infringement of a copyright"); 18 U.S.C. § 30(g) (authorizing injunctive relief for violations of the CFAA).

A plaintiff is entitled to equitable injunctive relief when: (1) the plaintiff has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391(2006). When a defendant's "refusal

to answer or appear . . . makes it difficult for plaintiff to prevent further infringement," the "traditional equitable principles established by *eBay Inc. v. MercExchange, LLC*...are satisfied and injunctive relief is warranted." *Herman Miller, Inc. v. Alphaville Design, Inc.*, CV:08-3437, 2009 U.S. Dist. LEXIS 103384, at *22 (N.D. Cal. October 22, 2009); *see also Philip Morris*, 219 F.R.D. at 502 ("[I]njunctive relief is appropriate because the claims otherwise warrant an injunction, and Defendant, though well aware of serious claims brought against it, has chosen to ignore this lawsuit. Failure to grant the injunction would needlessly expose the Plaintiff to the risk of continuing irreparable harm.").

Moreover, courts have continued to award injunctions as a matter of course in copyright infringement cases even after the *eBay* decision. *See Warner Bros. Entm't. Inc. v. Paul Duhy*, CV:09-5798, 2009 U.S. Dist. LEXIS 123332, at *9 (C.D. Cal. Nov. 30, 2009) ("a showing of copyright infringement liability and the threat of future violations is sufficient to warrant a permanent injunction."); *Autodesk, Inc. v. Flores*, CV:10-11687, 2011 U.S. Dist. LEXIS 11687, at *18-19 (N.D. Cal. January 31, 2011) (copyright infringement is "presumed to give rise to irreparable harm for which there is no adequate remedy at law."). Here, Summit's injunction is narrowly tailored to the specific harms shown in Summit's Complaint. Summit is therefore entitled to a permanent injunction against Defendants in the form included in the Proposed Default Judgment submitted herewith.

2. <u>Summit is Entitled to Statutory Damages</u>

Under the Copyright Act, a plaintiff "may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In cases of willful infringement, a court has discretion to award statutory damages of up to $150,000 for each infringed work. 17 U.S.C. § 504(c)(2). Here, Defendants' default has established that their infringement of

Summit's copyrights was willful. As alleged in Summit's Complaint, Defendants have infringed a total of fourteen of Summit's registered copyrights. (Compl. ¶¶ 39-40, Ex. 1).[1] Accordingly, Summit seeks a total of $2,100,000 for Defendants' willful infringement of said copyrights.

Summit has elected, pursuant to 17 U.S.C. § 504(c), to recover an award of statutory damages for Defendants' infringement of its copyrights. Given the willfulness of Defendants' infringement as evidenced by the undisputed allegations in Summit's Complaint, Summit respectfully requests that the Court award Summit statutory damages against Defendants in the maximum permissible amount of $2,100,000.

3. Summit is Entitled to Attorneys' Fees

Finally, Summit is entitled to an award of attorneys' fees and costs in pursuit of this action. Attorneys' fees and costs are recoverable under both 17 U.S.C. Section 504(a) and California Penal Code Section 502(e). Attorneys' fees under the Copyright Act may be freely awarded to the prevailing party as long as it "seeks to promote the Copyright Act's objectives." *Historical Research v. Cabral*, 80 F.3d 377, 378-79 (9th Cir. 1996), *citing Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533-34, 114 S. Ct. 1023, 127 L. Ed. 2d. 455 (1994)). In this case, an award of attorneys' fees is appropriate to vindicate Summit for the infringement of its copyrights. Defendants' deliberate and willful infringement of Summit's copyrighted works has forced Summit to incur attorneys' fees and related costs to protect its rights. Pursuant to

[1] Exhibit 1 to Summit's Complaint identified four copyrights that, at the time the Complaint was filed, were either pre-registered or for which registration had been applied. Those four copyrights have since proceeded to registration, with registration numbers as follows: (1) PAu003576942 (TSBD Unpublished Clip No. 1); (2) PAu003577237 (TSBD Unpublished GIF No. 1); (3) V3612D811 (The Twilight Saga: Breaking Dawn – Part 1); (4) V3611D081 (The Twilight Saga: Breaking Dawn – Part 2). (Caplan Decl. ¶ 7).

Local Rule 55-3, Summit seeks a total of $47,600 in attorneys' fees (representing $5,600 plus two percent of $2,100,000).

4. Summit is Entitled to Post Judgment Interest

Finally, Summit also seeks post-judgment interest on the aggregate sum of statutory damages and attorneys' fees awarded. Pursuant to 28 U.S.C. Section 1961(a), interest "shall be allowed on any money judgment in a civil case recovered in a district court." Accordingly Summit should be awarded post-judgment interest calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*

## IV. CONCLUSION

For the foregoing reasons, Summit respectfully requests that the Court enter the Proposed Default Judgment against Defendants submitted herewith.

Respectfully submitted,

Dated: July 1, 2013

By: /s/ David K. Caplan
David K. Caplan
Keats McFarland & Wilson LLP
Attorney for Plaintiff
Summit Entertainment, LLC